25 So.2d 301

STATE ex rel. CITY OF NEW ORLEANS
v. GRACE, Register of State Land
Office.

No. 37857.

Feb. 11, 1946.

Fred S. LeBlanc, Atty. Gen., W. C. Perrault, 1st Asst. Atty. Gen., and Robert R. Reid, 2nd Asst. Atty. Gen., for defendant and appellant.

Francis P. Burns, City Atty., and Chas. A. Danna, Asst. City Atty., both of New Orleans, for City of New Orleans, appellee.

HAMITER, Justice.

In an instrument of date July 14, 1944, filed with Lucille May Grace, Register of the State Land Office, one Millard C. Baker, Jr., made application to homestead, pursuant to the provisions of Act 235 of 1938, some property situated within the corporate limits of the City of New Orleans that had been adjudicated to the state for unpaid 1931 taxes. It is described as "A certain portion of ground and improvements, in the First District, bounded by Julia, Dorgenois, Broad and Poydras Streets, and designated as Lots 1–2–3–4–5–17–18–19, in Square 588."

Upon learning of such filing, the City of New Orleans, which is interested in the property by reason of certain tax and paving claims, instituted this injunction proceeding against the Register of the State

Land Office to prevent the further entertaining or the granting of Baker's application. Its contentions in the suit, being threefold, are that the property in question is not of the character and nature contemplated by the provisions of Act 235 of 1938; that such statute was never intended to apply to any lands situated within the limits of a municipal corporation; and that, for a number of asserted reasons, the statute is unconstitutional.

The Municipal Attorneys Association intervened, uniting with the plaintiff. The homestead applicant, Millard C. Baker, Jr., also filed an intervention, he opposing the issuance of the injunction.

The district judge, after a hearing on the rule nisi, ordered that a preliminary injunction be issued, restraining and enjoining the defendant, Lucille May Grace, Register of the State Land Office, from granting the application of Millard C. Baker, Jr. Subsequently, there was judgment perpetuating the preliminary injunction. From it only the defendant is appealing.

The purpose of Act 235 of 1938, as its title recites, is "To provide homesteads for actual settlers upon lands adjudicated to the State for unpaid taxes due thereon for any year or years subsequent to January 1, 1880." In applying to enter land under the provisions of the statute one must, according to Section 2, make and subscribe an affidavit " * * * that such application is made honestly and in good faith for the purpose of actual settlement and cultivation and to obtain a home for himself or herself and not for speculation; that such application is made for his or her own use and benefit and not directly or indirectly for the use or benefit of any other person, corporation or syndicate, to give them the benefit of the land or any part thereof or the timber." In Section 4 it is provided: "No patent shall issue for any lands entered under the provisions of this Act until after the expiration of five (5) years from the date of such entry; and if at the expiration of such period, or at any time within two (2) years thereafter, the person making such entry, or in case of his or her death, his or her heirs or devisees, prove by his or her own affidavit and the affidavits of two credible witnesses, taken separately, that he or she has resided upon and cultivated said land for the term of five (5) years immediately succeeding the date of entry, that no part of said land has been alienated or encumbered except as provided in Section 3 of this Act, and shall pay to the Register of the Land Office a fee of five ($5.00) dollars, he, she or they shall be entitled to a patent for the land so entered; * * *."

From the above quoted provisions, particularly by the use of the language "actual settlers," "actual settlement and cultivation," "has resided upon and cultivated said land," it seems clear that the Legislature intended the statute to apply only to lands susceptible of substantial cultivation and on which there would be erected and occupied by the homesteader a suitable dwelling. As we interpret it, in other words, the statute contemplates the applicant's using the property by establishing thereon a

home for himself and his family and also by his serious cultivation of it.

 The land involved here does not appear to be of the character and nature thus intended to be affected. As disclosed by the record, especially by certain photographs introduced in evidence, it is located within an industrial area of the City of New Orleans and is known as commercial property. The greater portion of the land is occupied by an operating sawmill and lumber yard, there being present all the buildings, equipment, and facilities required in the conduct of a business of that kind. On the remaining portion are several negro tenement houses and also an automobile wrecking establishment, familiarly known as a junk yard.

Although practically the entire surface of such land is now being utilized for commercial purposes, as above shown, it is quite possible that the applicant could clear a space sufficiently large for the erection of a dwelling in which to reside. But to come within the terms of the Act it is necessary not only to reside on the property but to seriously and substantially cultivate it as well. The latter requirement, we are certain, he can not meet. This observation finds support in the following remarks quoted from the brief of defense counsel:

"The land in question consists of eight city lots, probably totaling not more than one or two acres at the most. It appears to be almost entirely built up and not suitable to cultivation. Of course, a person could establish residence upon the land, but whether or not the requirements of the act

as to cultivation could be complied with appear very doubtful. If the Court feels that they cannot, then the Court should so hold and grant the relief prayed for without considering the legal or constitutional matters presented to it."

Our conclusion, above announced, makes unnecessary a consideration of the remaining two contentions of this plaintiff, which are (1) that Act 235 of 1938 was not intended to apply to any urban lands, and (2) that such statute is unconstitutional.

For the reasons assigned the judgment is affirmed.

O'NIELL, C. J., does not take part.